# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL S. HAMMON et al.,** | : | |
| *Plaintiffs*, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **KENNETT TOWNSHIP et al.,** | : | No. 17-1586 |
| *Defendants*. | : | |

## MEMORANDUM

PRATTER, J.                                                                                         DECEMBER 6, 2017

The facts of this case are quite unique, but the law is well-trodden. The plaintiffs, Michael and Amy Hammon, seek recovery for injuries stemming from a car accident in which Officer Albert McCarthy, in the throes of a seizure, struck Mr. Hammon's vehicle. Mr. Hammon claims that this amounts to a § 1983 violation, alleging state-created danger and *Monell* claims against the township employing the officer. Mr. Hammon argues that Officer McCarthy's past seizures give rise to supervisory liability. The defendants filed a motion to dismiss Mr. Hammon's complaint for failure to state a claim, arguing that the single act of allowing Officer McCarthy to stay on as police chief does not give rise to § 1983 liability. For the reasons stated below, the federal law claims are dismissed for failure to satisfy the requirements of § 1983. Given that the federal anchor claims are dismissed, the state law claims are dismissed for lack of jurisdiction.

### BACKGROUND

Officer McCarthy is the sole police officer (and therefore the chief of police) of Kennett Township, a small town of around 7,500 people southwest of Philadelphia. In August of 2008, Officer McCarthy hit his head on a steel beam, causing him to have a seizure a little more than 24 hours later. He notified the township and eventually returned to work.

Three years later, in October 2011, Officer McCarthy suffered an absent seizure[1] while driving on duty and rear-ended another car. He again notified the township of the incident. Although Officer McCarthy's doctor told him that he probably would not suffer another absent seizure, the township still placed Officer McCarthy on medical leave and suspended his drivers license.[2] Eventually, the township allowed Officer McCarthy to resume driving while on duty.

Over three years later, in April 2015, Officer McCarthy had another absent seizure while driving on duty. This time, he hit the plaintiff, Mr. Hammon, and that accident is the subject of this lawsuit. Mr. Hammon sued Officer McCarthy, the township, and the members of the township's board of supervisors for violating § 1983 and various state laws.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough

---

[1] An absent seizure is characterized by a momentary loss of consciousness that begins and ends abruptly, lasting only a few seconds. In contrast to traditional seizures, which cause the body to violently shake, absent seizures have no outside indications and often go unnoticed.

[2] Pennsylvania code requires suspension of a driver's license unless a licensed physician can report that "the person has been free from seizure for at least 6 months immediately preceding with or without medication." 67 Pa. Code § 83.4(a).

to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents"). Also, the Court must accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## DISCUSSION

To state a claim against an individual under § 1983, a plaintiff must show that the defendant (1) was a person who (2) under the color of state law (3) caused a (4) deprivation of constitutional rights. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Here, Mr. Hammon alleges both supervisory liability for the township and its board of directors, and liability for Officer McCarthy himself. The parties agree that these distinctions are largely irrelevant, given that the claims are the same for both groups of defendants. Mr. Hammon casts Officer McCarthy, as chief of police, as a supervisor for the purposes of § 1983. This agreement between the parties means that the arguments fall into two claims: *Monell* liability and state-created danger liability.

### I. *Monell* Liability

#### A. Legal Background

The Supreme Court has only addressed the question of supervisory liability twice in the last half century. First, in *Rizzo v. Goode*, the Court found that a theory a "pattern of frequent police violations" was insufficient to hold a police department liable under § 1983. 423 U.S. 362, 374 (1976). The Court held that there must be an "adoption and enforcement of deliberate policies" by defendants to give rise to liability. *Id.* The Court refined this standard two years later

in *Monell*. There, a group of women challenged an official policy requiring pregnant employees to take unpaid leaves of absence. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). The Court held the challenge to the official policy was permissible, but such liability is limited. *Id.* at 659. Although local governments were "persons" under § 1983, they could not be held liable under a theory of *respondeat superior*. *Id.* at 691. To be liable, the government must perform an official act. The "touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution." *Id.* at 690. However, "local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*

In other words, for a township to be held liable under § 1983, there must be either an official act or custom that caused the deprivation of civil rights. The *Monell* Court rejected, as a categorical matter, the concept of *respondeat superior* liability in § 1983.[3] Rather, there must be a "decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 659. As the Third Circuit Court of Appeals explained, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).

---

[3] Although there had been some dispute about whether this categorical rejection was dicta or precedential, the dispute is largely academic. The categorical reasoning behind rejection of *respondeat superior* applies equally to municipal liability addressed in *Monell*, and supervisory liability addressed in *Rizzo*. Post-*Monell* courts have taken the statement to apply equally to supervisory liability and municipal liability.

As lower courts analyzed the *Rizzo* and *Monell* cases, two salient features emerged. First, courts interpret "supervisory liability" differently than "municipal liability" under § 1983. For supervisory liability to attach, a plaintiff must either (1) "plead that [defendants] 'directed others to violate her rights'" *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *A.M.*, 372 F.3d at 586) or (2) that "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Stoneking,* 882 F.2d at 725. Municipal liability on the other hand, only attaches when an injury is "inflicted by 'execution of a government's policy or custom.'" *Santiago*, 629 F.3d at 135 (quoting *Monell*, 436 U.S. at 694).

Second, both standards focus on causation. For supervisors or policymakers to be liable, their actions must cause the deprivation of civil rights. In a straightforward application, a supervisor would be liable under § 1983 for an unconstitutionally race-based arrest if that arrest was made pursuant to an unconstitutional policy to arrest people based on race. But such a requirement need not be an affirmative step. It can also be "deliberate indifference to the plight of the person deprived." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). To meet the deliberate indifference standard, a plaintiff must plead that (1) there is an unreasonable risk of a deprivation of rights (2) that the supervisor or municipality was aware of that risk (3) that they were indifferent to that risk and (4) the failure to enact policies regulating that risk caused the deprivation of rights in this instance. *Id.* Only then can a policy-maker's inaction fairly be deemed as causing a plaintiff's deprivation of rights under § 1983.

### B. Application

Mr. Hammon alleges that the city had a policy or custom to allow such deprivations of citizens' civil liberties, but points to no evidence of such a policy or custom. Mr. Hammon tries

to argue that (1) the decision to allow Officer McCarthy to drive a car constitutes a custom or policy or (2) that the *lack* of a custom or policy preventing Officer McCarthy from driving a car constitutes a policy or custom.

As to the first argument, that a discrete act gives rise to *Monell* liability, Mr. Hammon points to a sole unpublished opinion by this Court. *See Hunter v. City of Phila.*, No. 15-cv-2737, 2015 WL 7734158 (E.D. Pa. Dec. 1, 2015). This Court cited to *Connick v. Thompson* for the proposition that a single act *could* give rise to liability for a city under § 1983. 563 U.S. 51, 63 (2011). But the *Connick* formulation of an act that can give rise to such liability encompasses a "narrow range" of actions. *Id.* at 64. The example the *Connick* Court gave was a "city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the deadly use of force." *Id.* at 63 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). Although that type of situation would be a discrete act, such an act is a *de facto* policy. In other words, the discrete acts in the *Connick* and *Canton* formulations were acts to *create a policy or custom*. The act the Court discussed there was so egregious and sweeping that the decisionmakers must have known that it would result in a deprivation of constitutional rights.

The parties have pointed to no case where a court has held that a simple decision, like the one at issue here, can give rise to liability. This is likely because such a holding would mean every action taken by a supervisor that resulted in injury would give rise to § 1983 liability. Mr. Hammon's reading of § 1983 would transform it from a statute that requires an intentional deprivation of rights to a strict liability statute. *Cf. Daniels v. Williams*, 474 U.S. 327, 330–32 (1986) (negligence cannot trigger liability under § 1983). Such an action would also fly in the

7

face of the Supreme Court's rejection of *respondeat superior* liability in the § 1983 context. *See Monell*, 436 U.S. at 691.

As to the second argument, that a lack of a policy constitutes a policy itself, Mr. Hammon again points to no case law on point. Although Mr. Hammon equivocates on his theory here, this argument is properly analyzed under the deliberate indifference standard. However, as the name implies, deliberate indifference requires that the policymakers were deliberately *indifferent* to the risk of harm. That is not the case here. The complaint alleges that the township had meetings and took action to regulate Officer McCarthy's access to a vehicle until he was deemed medically fit. Further, Mr. Hammon must also show that there was an unreasonable risk of the deprivation of civil rights. Here, multiple years passed between the traumatic brain injury and the present case. The complaint does not allege that Officer McCarthy was medically denied a return to duty, and nothing in the complaint shows that any medical personnel thought that a seizure would happen again. Because two of the four requirements for deliberate indifference are not, Mr. Hammon's claim under *Monell* is dismissed.

## II. State-Created Danger

### A. Legal Background

Mr. Hammon next argues that the defendants are liable for creating the danger that led to the car accident. To establish a state-created danger claim under § 1983, a plaintiff must plead four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

8

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir. 2013). *See also Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013).

The Third Circuit Court of Appeals has noted that "the line between action and inaction is not always easily drawn." *Morrow*, 719 F.3d at 177. The plaintiffs in *Morrow* argued that the affirmative act sufficient to meet this test was allowing a bully to return to school after a suspension. The *Morrow* court rejected such an argument. To convert such passive inaction to an "affirmative act" would convert *any* decision into an affirmative act that gives rise to liability. In the *Morrow* case, it would convert action aimed at protecting the children (suspending the bully) into an act that gives rise to liability. Such a conclusion is untenable.

### B. Application

The fact pattern here is remarkably akin to that in *Morrow*. Here, Officer McCarthy was suspended from driving activities after his first car accident, just as the bully in *Morrow* was suspended. The plaintiff here argues that allowing Officer McCarthy to return from his suspension constitutes an affirmative act, just like the plaintiffs in *Morrow* argued that allowing the bully to return to school was an affirmative act. The Third Circuit Court of Appeals rejected that claim, and the parallel fact pattern here means that this Court is bound to do the same.

Not only does Mr. Hammon's claim fail for failure to plead an affirmative act, but it also fails on the third requirement. For there to be recovery as a state-created danger, the actions taken must be targeted at a discrete individual or group, not the public in general. Here, the risk

9

of harm was not targeted at Mr. Hammon or anyone in particular.[4] Rather, the risk that Officer McCarthy's seizure would cause an accident was a risk directed toward the public in general.

Finally, the actions taken by the defendants here do not shock the conscience. The complaint does not plead that Officer McCarthy was barred from driving his vehicle when the crash occurred. In fact, it pleads that Officer McCarthy voluntarily submitted to neurological consults every three months after the initial accident, and stopped driving immediately. Given the length of time without a seizure (over three years) after the first car accident, it was reasonable to believe Officer McCarthy could safely operate a motor vehicle, and allowing Officer McCarthy to drive certainly does not shock the conscience. Given that three of the four requirements for a state-created danger are not met, this claim similarly must be dismissed.

### III.     State Law Claims

The dismissal of the § 1983 claims means that the only remaining claims are state law claims. If the federal anchor claim is dismissed, "the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court therefore dismisses the remaining state law claims for lack of subject matter jurisdiction.

### CONCLUSION

For the foregoing reasons, the Court dismisses the complaint for failure to state a claim and lack of subject matter jurisdiction. An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[4] This requirement was not at issue in *Morrow* because the actions taken were in relation to a bully. The bully was victimizing a specific person (the plaintiff) so this requirement was easily satisfied.